**Judy Lee YATES–COBB, Appellant–Defendant,**

v.

**Jerri Anne HAYS, Appellee–Plaintiff.**

**No. 67A05–9602–CV–65.**

Court of Appeals of Indiana.

June 9, 1997.

James M. Houck, Greencastle, Barbara W. Stackler, Stackler & Stackler, Pro Hac Vice, Chicago, IL, for appellant.

Carolyn A. Hallanger, Novi, MI, for appellee.

## OPINION

RUCKER, Judge.

Defendant–Appellant Judy Lee Yates–Cobb appeals a judgment in favor of her sister, Plaintiff–Appellee Jerri Anne Hays. The judgment restored to Jerri certain assets left to her upon the death of her mother and provided for payment of court costs and attorney's fees. Judy raises several issues for our review which we rephrase as: 1) did the trial court err in denying Judy's motion to dismiss for lack of personal jurisdiction, 2) did the trial court err in finding that Jerri had rescinded an agreement concerning inherited assets, 3) was the trial court's award capricious or an abuse of discretion, and 4) did the trial court err in granting attorney's fees to Jerri? We affirm in part and reverse in part.

The plaintiff in this case, Jerri Anne Hays, is one of three daughters of Thomas and Ruth Yates, both residents of the state of Florida. Jerri is a farmer and resides in Indiana. Her sister Judy is a Certified Public Accountant licensed to practice in Indiana but living in the state of Illinois. The third sister, Jacqueline, is a Pennsylvania resident. On October 16, 1990, their mother, Ruth Yates, died unexpectedly. Her funeral was conducted in Florida the following day. After the funeral, Judy set about the task of determining the financial assets of the mother. In the process Judy discovered that the mother had so titled her assets that they would pass to each daughter without the need for probate. Much of the assets were in the form of certificates of deposit on file with various Florida banks. The certificates were each titled in the name of the mother or father and the name of one of the daughters, thus effectuating an approximately equal distribution of the deposited funds. Bank records revealed that Jacqueline was the owner of certificates of deposit in the amount of $133,747.00, Judy in the amount of $145,226.00, and Jerri in the amount of $126,963.79. Rather than informing her sisters of their present right of ownership in the certificates, Judy instead proposed that they draft an agreement to effectuate the alleged wishes of their mother. The agreement would correct the discrepancy in the amounts

given to each daughter and provide for the repayment by Jerri of approximately $73,-000.00 in loans previously made to her by her parents. The proceeds of the repayment would go to each sister in equal shares. The agreement also would provide for the setting aside of funds from each sister's share for the benefit of their father who was still living. Judy's attorney reduced the agreement to writing, and the sisters signed it on October 20, 1990 in the state of Florida. Pursuant to a provision in the written agreement giving Judy the authority to invest and manage a portion of the funds, Judy added her name to her sisters' accounts and collected all passbooks and other indicia of account ownership as necessary to control the accounts.

After she returned to Indiana, Jerri discovered that the funds on deposit were not subject to probate and rather she was entitled to immediate receipt of the money. She therefore advised her sisters that she wished to cancel the agreement and receive the funds that were titled in her name. The sisters responded to Jerri by submitting a letter dated February 20, 1991 wherein they agreed that Jerri would receive the funds so titled. However Judy, who was in sole possession and control of the accounts, failed to immediately relinquish the money. Instead, she insisted that Jerri first make provision to pay back the loans from her parents. Finally, on March 6, 1992, Judy relinquished the value of the certificates of deposit less $78,-621.95. The latter amount, representing the balance due on the loans, Judy paid over to William Anderson, the father's legal guardian.

On April 20, 1993, Jerri filed a complaint against Judy alleging fraud and conversion and seeking recovery of the $78,621.95 along with treble damages and attorney's fees. Judy responded by filing a motion to dismiss the complaint for lack of personal jurisdiction. The trial court denied the motion and the case proceeded to trial. In its order dated November 14, 1995, the trial court found that the October 20, 1990 agreement had been rescinded by the parties and therefore Jerri was entitled to judgment in the amount of $78,621.95. The court also grant-

ed Jerri attorney's fees and costs in the amount of $18,407.19. The court denied Jerri's request for treble damages, finding there was insufficient evidence of malice, gross negligence or criminal conduct to support the award. Pursuant to a request by Jerri, the court entered special findings of fact and conclusions of law in support of its judgment. This appeal ensued in due course.

## I.

Judy first contends the trial court erred in denying her motion to dismiss the complaint for lack of personal jurisdiction.

■ To gain personal jurisdiction over a non-resident, Indiana courts must rely on Indiana's long-arm statute, Ind.Trial Rule 4.4(A). T.R. 4.4(A) provides that non-residents submit to personal jurisdiction within Indiana for any action arising from one of seven enumerated acts. The purpose of T.R. 4.4(A) is to extend jurisdiction to the boundaries permitted by the due process clause of the Fourteenth Amendment. *Fidelity Financial Servs., Inc. v. West,* 640 N.E.2d 394, 397 (Ind.Ct.App.1994). Because T.R. 4.4(A) seeks to extend jurisdiction to the limits of due process, "the usual two-step analysis of first checking if a state statute allows jurisdiction over [a] defendant and then ascertaining whether the state's assertion of jurisdiction accords with due process collapses into a single search for the outer limits of what due process permits." *Torborg v. Fort Wayne Cardiology, Inc.,* 671 N.E.2d 947, 949 (Ind. Ct.App.1996) quoting *Oddi v. Mariner–Denver, Inc.,* 461 F.Supp. 306, 308 (S.D.Ind. 1978).

■ Due process requires that the defendant have certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Harold Howard Farms v. Hoffman,* 585 N.E.2d 18 (Ind. Ct.App.1992). Minimum contacts are required to assure that a defendant has purposefully availed himself of the jurisdiction of the forum state. *Baseball Card World, Inc. v. Pannette,* 583 N.E.2d 753 (Ind.Ct.App. 1991), *trans. denied.* The "purposeful avail-

ment" requirement ensures that a defendant will not be haled into a jurisdiction solely on the basis of random, fortuitous or attenuated contacts or the unilateral activity of another party or a third person who claims some relationship with him. *First American Bank of Va. v. Reilly,* 563 N.E.2d 142 (Ind.Ct.App. 1990).

■ Here, Judy's connection with Indiana as an accountant licensed to practice in the state is relevant in light of her activities in administering the certificates of deposit. Even more relevant for jurisdictional purposes are Judy's direct contacts with the forum. These include: the February 20, 1991 letter from Judy and Jacqueline to Jerri in Indiana acknowledging Jerri's desire to repudiate their agreement; a September 30, 1991 letter to Jerri providing details of the loan balance plus interest and providing an accounting of Jerri's funds on deposit; a proposed settlement agreement signed by Judy and forwarded to Jerri on or about July 1, 1991; a letter to Jerri's attorney in Indiana on January 7, 1992 referencing enclosed documents pertaining to the parties' dispute; and telephone calls initiated by Judy concerning the dispute. At all times relevant to the present action Judy was aware that her sister was a resident of Indiana. Judy herself traveled to Indiana on one occasion during the dispute in order to rent a storage space for placement of items of personal property left to Jerri from their mother's estate. Judy's contacts with Indiana were thus not fortuitous or attenuated but were purposeful and necessary for resolution of the parties' dispute. The trial court did not err in denying Judy's motion to dismiss for lack of jurisdiction.

## II.

Judy next challenges the trial court's finding that the October 20, 1990 agreement was rescinded. According to Judy, the parties' communications did not amount to a rescission of the agreement and furthermore in the event of rescission Jerri would be required to return the money borrowed from her parents.

■ Where a party challenges special findings and conclusions entered pursuant to Ind.Trial Rule 52(A), this court applies a two-tiered standard: first, we determine whether the evidence supports the findings; second, we determine whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if they are clearly erroneous. *W & W Equipment Co., Inc. v. Mink,* 568 N.E.2d 564, 569–70 (Ind.Ct. App.1991), *trans. denied.* Findings of fact are clearly erroneous if the record lacks any facts or reasonable inferences to support them. *DeHaan v. DeHaan,* 572 N.E.2d 1315 (Ind.Ct.App.1991), *trans. denied.* In determining whether the special findings and judgment are clearly erroneous, we will not reweigh the evidence or judge witness credibility. *Id.* Rather, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Citizens State Bank v. Peoples Bank,* 475 N.E.2d 324 (Ind.Ct.App.1985).

■ Rescission of a contract has been defined as the annulling, abrogating or unmaking of a contract. *Aldon Builders, Inc. v. Kurland,* 152 Ind.App. 570, 284 N.E.2d 826, 832 n. 1 (1972); Black's Law Dictionary 1174 (5th ed.1979). In the event of rescission the parties must return any items of value received pursuant to the contract and must restore all benefits accrued under the contract. *Hart v. Steel Products, Inc.,* 666 N.E.2d 1270, 1275 (Ind.Ct.App.1996), *trans. denied.* The effect of contract rescission is to return the parties to the status quo. *Horine v. Greencastle Prod. Credit Ass'n,* 505 N.E.2d 802, 805 (Ind.Ct.App.1987). The status quo in this case was Jerri's right to receive $126,963.79 in certificates of deposit left by her mother. Any obligation for repayment of loans from her parents stemmed from a separate agreement and promissory notes the parents executed on a prior occurrence. Jerri's sisters had no right to collect on the notes except as granted in the October 20, 1990 agreement. If that agreement were rescinded, then Jerri's obligation to her sisters for repayment of the loans no longer existed. Here the record reveals that a rescission did occur. On February 20, 1991 a letter sent to Jerri by her sisters indicated that Jerri's expressions of dissatisfaction with the agreement had led the sis-

ters to "return things to the way they were before the three of us made our agreement" and to "return the question of the distribution of the estate to what it was before October 20." *Record* at 476–77. Further, in response to questioning by Jerri's counsel at trial, Jacquelyn testified that the language in the letter indicated acceptance of Jerri's renouncement of the agreement. This evidence supports the court's finding of rescission, and the finding is therefore not clearly erroneous.

## III.

■ Judy next complains that the trial court's judgment is capricious and an abuse of discretion because the court did not explain its reasons for entering judgment and because the court declined to make any finding concerning the amount of the debt owed by Jerri to her parents. Here, the record is clear that the reason for the court's entry of judgment is the rescission entered into by the parties. The court made no finding regarding the amount of the debt owed by Jerri because that determination was not material to the issues at hand. The trial court's judgment was proper and not an abuse of discretion.

## IV.

Judy finally contends that the trial court erred in awarding attorney's fees to Jerri.

■ Absent statutory authority or contractual agreement, each party must pay his or her own attorney's fees. *Dale Bland Trucking, Inc. v. Kiger,* 598 N.E.2d 1103, 1105 (Ind.Ct.App.1992), *trans. denied.* Jerri's complaint was brought pursuant to Ind. Code § 34–4–30–1 which allows the recovery of treble damages and attorney's fees for injuries caused by criminal acts. In its findings in support of the judgment, the trial court determined that there was insufficient evidence of criminal conduct to support an award under the statute. Because there was also no evidence of a contract providing for the award of attorney's fees, the award of such fees was in error.

We reverse the trial court's award of attorney's fees in favor of Jerri. In all other respects, the judgment of the trial court is affirmed.

SHARPNACK, C.J., and BAKER, J., concur.