**Peggy L. D'IORIO, Appellant–Plaintiff,**

v.

**Robert A. D'IORIO, Appellee–Defendant.**

No. 71A03–9709–CV–305.

Court of Appeals of Indiana.

May 6, 1998.

Mark J. Phillipoff, Jones, Obenchain, Ford, Pankow, Lewis & Woods, South Bend, for Appellant–Plaintiff.

Paul J. Peralta, Edward A. Sullivan, III, Baker & Daniels, South Bend, for Appellee–Defendant.

## OPINION

GARRARD, Judge.

### Case Summary

Peggy D'Iorio ("Wife") appeals the dismissal of her suit to enforce a reconciliation agreement with Robert D'Iorio ("Husband"). We affirm.

### Issue

Wife presents one issue which we restate as: whether the trial court erred in dismissing her suit for lack of personal jurisdiction.

### Facts and Procedural History

Wife and Husband were married in Massachusetts in 1969. They lived in Massachusetts for seven years immediately following their marriage and then in Pennsylvania for the eight years thereafter. In 1984, Wife separated from Husband. She moved with her children to Michigan where she began attending classes at Detroit College of Law.

The next year, Wife moved into her mother's home in Sturgis, Michigan and started commuting to Notre Dame's law school. In February of 1985, Wife filed for a dissolution in Michigan. That same year, Husband quit his job as a physician, began renting a house on the same Michigan lake where Wife was living, started following her to Notre Dame, and filed for a dissolution in Pennsylvania. Although during this time Wife filed for a restraining order in Michigan against Husband, the couple began discussing reconciliation when Husband stated that he would not support the family and would take their as-

sets to another country if Wife went through with her dissolution action.

On September 10, 1985, the parties signed a reconciliation agreement drawn up by a South Bend attorney retained by Wife. The agreement stated, *inter alia:*

WHEREAS, the parties are husband and wife, but each have filed divorce actions ...

WHEREAS, the parties desire to attempt reconciliation ...

WHEREAS, each of the parties have agreed to do certain things to accomplish the reconciliation.

NOW, THEREFORE, in consideration of the premises and the mutual agreements of the parties, they do now agree as follows:

1. [Husband] agrees to transfer Forty Thousand and No/100 Dollars ($40,000.00) in cash to [Wife] upon execution of this agreement, ...

2. [Husband] shall cause to be conveyed to [Wife], in her name alone, the family home in ... Pennsylvania, together with all furniture and fixtures located therein.

3. [Husband] shall deliver to [Wife] approximately One Hundred Thousand and No/100 Dollars ($100,000.00) to One Hundred Ten Thousand and No/100 Dollars ($110,000.00) cash by Friday, September 13, 1985, and the further delivery of approximately Two Hundred Sixty-five Thousand and No/100 Dollars ($265,000.00) to Two Hundred Seventy-five Thousand and No/100 Dollars ($275,000.00) in cash or gold within fourteen (14) days after execution of this Agreement.

4. [Husband agrees to use best efforts to cause a criminal action against Wife to be dismissed].

5. [Husband agrees to support his family, undertake psychological counseling, and pay Wife's various attorney fees].

\*   \*   \*   \*   \*   \*

7. ... [Wife] is agreeing to the transfer of the assets enumerated herein only as consideration for her agreement to recon-

cile with [Husband] and live together as husband and wife in the State of Michigan or other state as they may agree, provided, however, that this Agreement shall not require [Wife] to live with [Husband] for any fixed period of time after there has occurred a breakdown of the marriage. . . .

\*   \*   \*   \*   \*   \*

9. This Agreement shall be construed under the law of the State of Michigan.

Record at 21–23. Within the reconciliation agreement, the parties also agreed to drop their respective dissolution actions. Thereafter, the parties lived together in Sturgis, Michigan. Husband began attending counseling in Valparaiso and paid Wife a portion of the money called for by the reconciliation agreement.

In September of 1995, Wife filed a complaint in the St. Joseph Superior Court against Husband based on his failure to pay her $175,000.00, the long delinquent balance due under the agreement. By then, Wife was a resident of Florida and Husband was a resident of Maryland.[1] Husband filed a motion to dismiss the Indiana complaint for lack of jurisdiction over Husband. In the alternative, Husband's motion also claimed forum non conveniens, citing his various health problems. The St. Joseph Superior Court judge issued the following order: "Hearing was held in this matter and the Court reserved ruling for the opportunity to study the parties' submissions. The Court now finds that the Indiana courts have no jurisdiction over the parties and accordingly, [Wife's] claim is dismissed without prejudice." Record at 184.

### Discussion and Decision

■■■ Wife argues that under Trial Rule 4.4(A)(1), the St. Joseph Superior Court had personal jurisdiction over Husband, thus dismissal was inappropriate. The decision to grant or deny a motion to dismiss based on lack of personal jurisdiction lies within the sound judgment of the trial court. *Freemond v. Somma,* 611 N.E.2d 684, 687 (Ind. Ct.App.1993), *trans. denied.* As with any fact-finding entrusted to the trial court, it is

---

1. In January, 1996, Wife once more filed for divorce in Michigan.

within the trial court's discretion to decide the jurisdictional facts. However, once the court has decided those facts, whether personal jurisdiction exists is a question of law. *Id.*

To gain personal jurisdiction over a nonresident, Indiana courts must rely on Indiana Trial Rule 4.4(A). *Yates–Cobb v. Hays,* 681 N.E.2d 729, 732 (Ind.Ct.App.1997). Indiana Trial Rule 4.4(A)(1) provides that any person that is a nonresident of Indiana submits to the jurisdiction of our courts as to any action arising from his "doing any business" in this state. We have stated:

> The purpose of T.R. 4.4(A) is to extend jurisdiction to the boundaries permitted by the due process clause of the Fourteenth Amendment. Because T.R. 4.4(A) seeks to extend jurisdiction to the limits of due process, "the usual two-step analysis of first checking if a state statute allows jurisdiction over [a] defendant and then ascertaining whether the state's assertion of jurisdiction accords with due process collapses into a single search for the outer limits of what due process permits."

Due process requires that the defendant have certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Minimum contacts are required to assure that a defendant has purposefully availed himself of the jurisdiction of the forum state. The "purposeful availment" requirement ensures that a defendant will not be hailed into a jurisdiction solely on the basis of random, fortuitous or attenuated contacts or the unilateral activity of another party or a third person who claims some relationship with him.

*Yates–Cobb,* 681 N.E.2d at 732–33 (citations omitted).

■ There are no hard and fast rules regarding the existence of minimum contacts. Rather, whether minimum contacts exist in a particular factual setting must be determined on a case-by-case basis. *Kulko v. Superior Court of California,* 436 U.S. 84, 92–93, 98 S.Ct. 1690, 1696–98, 56 L.Ed.2d 132 (1978). The factors to be considered are: 1) the nature and quality of the contacts with the forum state; 2) the quantity of contacts with the state; 3) the relationship between those contacts and the cause of action; 4) the interest of the forum state in providing a forum for its residents; and 5) the convenience of the parties. *Fetner v. Maury Boyd & Assocs., Inc.,* 563 N.E.2d 1334, 1337 (Ind. Ct.App.1990), *trans. denied.*

■ During their marriage, Husband and Wife lived together in Massachusetts, Pennsylvania, and Michigan, but never in Indiana. Neither party ever filed for a dissolution in Indiana. Neither party ever worked in Indiana. Wife merely commuted to South Bend for a portion of her legal education and hired an attorney in South Bend to draw up the reconciliation agreement. While the reconciliation agreement was signed and a first payment was made in Indiana, the agreement contains no provision specifying where those actions were to have taken place. In fact, the agreement's only indications of specific places are its choice of law provision (Michigan) and its provision as to where the parties will live (Michigan or some other mutually agreed upon location). Today, neither party resides in Indiana.

Husband's only other ties to Indiana were his brief stay in a South Bend hotel prior to his finding a house to rent in Michigan, his trips following Wife to the law school in order to discuss possible reconciliation, and a brokerage account in Indiana. We cannot say that these activities amounted to "doing business in this state" within the meaning of Trial Rule 4.4(A)(1). That is, these actions are not of the nature, quality, or quantity necessary to establish the minimum contacts required to justify Husband being hailed into an Indiana court. Likewise, the other three factors set out in *Fetner* do not support an assertion of jurisdiction in Indiana under the particular facts of this case. Accordingly, we conclude the trial court did not abuse its discretion when it dismissed without prejudice Wife's suit on the reconciliation agreement due to lack of personal jurisdiction. *Cf. Garvey v. Mendenhall,* 199 Ga.App. 241, 404 S.E.2d 613, 615 (1991) (concluding that noncommercial claims arising from a personal relationship would not support jurisdiction under statutory provision requiring the

transaction of business), *cert. denied,* (1991); *Whisenant v. Whisenant,* 219 Kan. 387, 548 P.2d 470, 475 (1976) (finding lack of jurisdiction over paternity action because defendant's intercourse, promise to marry, and purchase of wedding ring cannot reasonably be said to constitute the transaction of business within the meaning of long arm statute).

Affirmed.

HOFFMAN and STATON, JJ., concur.