Michael W. SMITH and Kathryn H. Smith, Appellants,

v.

MILLER BUILDERS, INC., St. Joseph County Drainage Board and St. Joseph County Surveyor, John R. McNamara, Appellees.

No. 71A03–0002–CV–0045.

Court of Appeals of Indiana.

Dec. 14, 2000.

## OPINION

SHARPNACK, Chief Judge

Michael and Kathryn Smith (collectively, the Smiths) appeal the trial court's judgment in favor of the St. Joseph County Surveyor, John McNamara (the Surveyor); the St. Joseph County Drainage Board (the Board); and Miller Builders, Inc. (Miller). The Smiths raise three issues, which we restate as:

1) whether the trial court's conclusion that the notice the Smiths sent to the Surveyor did not comply with the Indiana Tort Claims Act is clearly erroneous;

2) whether the trial court's conclusion that the Board's acts or omissions did not create any cause of action in favor of the Smiths is clearly erroneous; and

3) whether the trial court's conclusion that the Smiths could not recover against Miller on an implied warranty of habitability theory because the Smiths did not rely on Miller's skill or expertise is clearly erroneous.

We affirm in part, reverse in part, and remand.

The facts most favorable to the judgment follow. In 1980, Miller filed an application with the Area Plan Commission for the approval of a subdivision located in St. Joseph County. Miller proposed using retention ponds as the mode of draining storm water. After an investigation of Miller's application, the Surveyor indicated that an urban drain[1] was needed. On July 15, 1980, the Area Plan Commission approved the tentative subdivision plan subject to certain recommendations.

The project was dormant until April 28, 1981, when Miller submitted a second and revised application for the same real estate. As part of the application, Miller submitted a soils review report that indicated the possibility of groundwater prob-

Robert J. Palmer, John H. Peddycord, May, Oberfell & Lorber, South Bend, Indiana, Attorney for Appellants.

Susan R. Hanson, Kenneth P. Cotter, Tuesley & Hall, LLP, Timothy P. McLaughlin, Kathleen Cekanski–Ferrand, South Bend, Indiana, Attorneys for Appellees.

1. An urban drain establishes a specific area to be assessed for the maintenance of drainage swales and retention and detention ponds that are put into a geographic area. Record, p. 837.

lems on certain lots. Consequently, the application was referred to the Soil Review Committee of the Area Plan Commission. After a meeting, the Soil Review Committee approved the preliminary subdivision subject to the condition that the ground elevation for lots 66 through 73 be set at 793 feet above sea level. In August 1986, after the subdivision's drainage system was classified as an urban drain, the Area Plan Commission gave its final approval for the subdivision.

At some point, Miller conveyed lot 71 of the subdivision to Mrs. Crachy, the wife of experienced homebuilder, William Crachy. In 1988, Crachy built a house on lot 71. At some point during Crachy's ownership, the basement area flooded on one occasion following heavy rains. The drainage basin at the rear of the lot also filled with water, as did the walkout basement leading to a patio area.

In 1991, the Smiths bought the house on lot 71 from Mrs. Crachy. During one of the meetings preceding the sale, the Crachy's informed the Smiths of the earlier flood. In June 1993, following extensive rainfall, the Smiths' basement flooded. Shortly after the June 1993 flood, the Smiths contacted the Surveyor and requested that the Board authorize an engineering firm to do a study regarding the ground water problem. The resulting study revealed that the retention basins, which were designed to accommodate 101,-000 cubic feet of water, were constructed to accommodate only 79,074 cubic feet of water. Additionally, although the plans called for the installation of an 1,800 gallon drywell in each retention basin, none were found. Moreover, the study revealed that the lots located in the southwest part of the subdivision, which included the Smiths' home located on lot 71, were in a natural drainage course.

The Smiths filed a complaint against Miller in January 1995 alleging that Miller negligently designed, planned, supervised, constructed or observed the construction of the drainage facilities in the subdivision and that Miller had failed to disclose a latent defect in the drainage facilities thereby breaching the implied warranty of habitability. The complaint was later amended to add the Board and the Surveyor as defendants. In the amended complaint, the Smiths alleged that the Board and the Surveyor negligently supervised, monitored, or observed the construction of the drainage facilities, failed to warn buyers of the lots in the subdivision of the potential water problems, and maintained said drainage facility as a nuisance. Following a bench trial, the trial court entered judgment in favor of the defendants.

 Where, as here, a party has requested specific findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A), we engage in a two-tiered standard of review. *Yates–Cobb v. Hays*, 681 N.E.2d 729, 733 (Ind.Ct.App.1997). We first determine whether the evidence supports the findings. *Id.* Then we determine whether the findings support the judgment. *Id.* The trial court's findings and conclusions will not be set aside unless they are clearly erroneous. *Id.* Findings are clearly erroneous if the record contains no facts or reasonable inferences to support them. *Id.* In determining whether the findings and judgment are clearly erroneous, we neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

 In this case, the Smiths do not challenge the trial court's findings of fact. [W]here a party challenges only the judgment as contrary to law and does not challenge the special findings as unsupported by the evidence, we do not look to the evidence but only to the findings to determine whether they support the judgment. *Boyer v. First Nat. Bank of Kokomo*, 476 N.E.2d 895, 897 (Ind.Ct.App.1985).

I.

The first issue is whether the trial court's conclusion that the notice the Smiths sent to the Surveyor did not comply with the Indiana Tort Claims Act is

clearly erroneous. Before a tort lawsuit may be brought against a political subdivision of the state, the Tort Claims Act (the Act) requires that written notice of the claim be given to the subdivision's governing body within 180 days after the loss occurred.[2] Ind.Code §§ 34–13–3–1; 34–13–3–8. The notice must:

> ... describe in a short and plain statement the facts on which the claim is based. The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

Ind.Code § 34–13–3–10.

With respect to the notice that the Smiths sent to the Surveyor in this case, the trial court found as follows:

> The notice was sent to [the Surveyor], among others, at least according to the heading. Nonetheless, he is never mentioned in the recitation of events as one of the 'persons involved.' It was not until [the Smiths] filed their Third Amended Complaint in early March of 1997 that [the Surveyor] (and the County) were apprised that his own actions were being called into question by Mr. and Mrs. Smith. Such was nearly four years after-the-fact. The notice was insufficient.

Record, pp. 689–690. The Smiths argue that the trial court's conclusion that the notice they sent to the Surveyor was insufficient is clearly erroneous for three reasons: (1) the notice substantially complies with the requirements of the Act; (2) notice to the Surveyor was unnecessary to the extent that their complaint requested equitable relief; and (3) the Surveyor waived, or is estopped from asserting, the inadequacy of the tort claims notice be-

cause he failed to obtain a pretrial determination of the sufficiency of the notice. We will address each contention in turn.

## A.

■■■ The Smiths first argue that the trial court's conclusion that the notice they sent to the Surveyor was insufficient is clearly erroneous because the notice substantially complies with the requirements of the Act. The purpose of the Act's notice provision is to inform state officials with reasonable certainty of the incident and the surrounding circumstances so that the State may investigate, determine its possible liability, and prepare a defense to the claim. *Ricketts v. State,* 720 N.E.2d 1244, 1246 (Ind.Ct.App.1999), *trans. denied.* Because notice requirements such as these are in derogation of common law, they are to be strictly construed against limitations on a claimant's right to bring suit. *Collier v. Prater,* 544 N.E.2d 497, 498 (Ind.1989). Thus, [s]ubstantial compliance with such notice requirements is sufficient where the purpose of the notice requirement is satisfied. *Ricketts,* 720 N.E.2d at 1246. Although there may be factual issues to be determined, whether there has been compliance with the Act's notice requirements is a question of law which we review de novo. *Budden v. Board of Sch. Comm'rs,* 698 N.E.2d 1157, 1160 (Ind.1998).

In the instant case, the Smiths' tort claim notice, in pertinent part, is as follows:

> Pursuant to the notice provisions of I.C. 34–4–16.5–7, Indiana Tort Claims Act, please take notice of the tort claims of [the Smiths] ....

> These tort claims arise from the fact that [the Board] is negligently maintaining and/or continuing and maintaining a nuisance at certain drainage basins and related facilities located in Section I of

---

2. The parties do not dispute that the Surveyor is covered by the Act's notice provisions. *See,*

*e.g.,* Ind.Code § 34–13–3–22.

Sherwood Forest, a residential subdivision in St. Joseph County, Indiana. Specifically, on or about August 7, 1986, [Miller] ... obtained approval of a plat for Sherwood Forest, Section I, in said residential subdivision, from the St. Joseph County Area Plan Commission and [the Board]....

That in conjunction with the approval of said subdivision, [Miller] submitted a drainage plan ... which was approved by the appropriate governmental authorities, including [the Board], and which contained specific provisions for the construction of drainage facilities; that said facilities were to have been constructed in accordance with the government-approved plans and specifications for the drainage facility.

The [Miller] and [the Board] negligently designed, planned, supervised, constructed or observed the construction of said drainage facilities ... in that they failed to construct three (3) level basins with a total retention capacity of one hundred thousand sixty-six (100,066) cubic feet; failed to install two (2) separate dams between the three (3) separate retention areas as provided in the plans and specifications as approved by the governmental authorities, including [the Board]; and failed to install drywells in the bottoms of said drainage basins.

\* \* \* \* \* \*

That [Miller] was cautioned ... that groundwater problems might be encountered in any construction of homes on lots located within the southwest portion of the property, said area including lots numbered 66 through 73 of Section I of said Sherwood Forest Subdivision; that [the Smiths] have reason to believe [the Board] was aware of said warning ... but, nevertheless, approved the plans submitted by [Miller] for the drainage basins and related facilities.

\* \* \* \* \* \*

That the negligence of [Miller] and [the Board] did proximately cause damage to the [Smiths'] property located ... [on] Lot Numbered Seventy-one (71) of Sherwood Forest, Section I.

That as a result of the negligence of [Miller] and [the Board], the [Smiths'] property, including the lower living quarters of their residence, were flooded by overflow water and [the Smiths] believe they will continue to be flooded by overflow water from the retainage basins constructed by [Miller] and that both the [Smiths'] residence and personal property were damaged thereby; that [the Smiths] have incurred loss of use of their property and other damages in attempting to rectify the problems caused by the negligence of [Miller] and [the Board], as well as the continuance and maintenance of the nuisance by [the Board].

That [the Board] is negligently maintaining and/or continuing and maintaining a nuisance of said property belonging to [the Smiths] as well as adjoining lots and that said nuisance constitutes a public health hazard to not only the Smiths but also to other members of the public.

That [the Board] has failed and refused to cause the nuisance in question to be abated by the correction and reconstruction of the drainage basins and facilities in question by [Miller] despite repeated requests to do so from [the Smiths] and their counsel.

That [the Smiths] hereby claim damages from [the Board] in amounts sufficient to compensate them for their losses plus prejudgment interest, for the costs, including reasonable attorney fees, of any negligence and/or nuisance actions they might file against [the Board], said damages not anticipated to exceed the sum of one hundred thousand dollars ($100,-000.00).

That [the Smiths], in addition to seeking damages for said negligence and/or continuing nuisance, demand that [the Board] abate said nuisance and, upon its failure to do so, shall file an appropriate

court action to seek abatement of the nuisance, including injunctive relief, and shall further seek to recover reasonable attorney fees, court costs, etc. incurred in the process.

\* \* \* \* \* \*

Record, pp. 26–28. The Smiths assert that the above quoted notice was very factually detailed, gave notice of the facts and circumstances surrounding the claim, and gave notice of their intent to assert a claim. We agree, to the extent that this assertion relates to the adequacy of the notice to the Board. However, the notice never mentioned the Surveyor and included no information to put the Surveyor on notice that the Smiths might have a claim against him individually.

The Smiths acknowledge that the body of the tort claims notice does not specifically refer to the Surveyor. Nonetheless, the Smiths contend that the fact that the notice was served on the Surveyor and that the notice set forth very specific facts rendered the notice adequate as to the Surveyor because he was able to investigate and determine his potential liability. In support, the Smiths cite *Scott v. Gatson,* 492 N.E.2d 337 (Ind.Ct.App.1986).

In *Scott,* a city bus rear-ended the plaintiff's car. *Id.* at 338. Prior to suing both the bus driver and the city, the plaintiff sent a tort claim notice to the city that included the bus driver's name in the caption but did not refer to the driver in the body of the letter. *Id.* at 341. In light of a challenge by the city that the notice was insufficient because it omitted the name of all persons involved, this court noted that because the caption portion of the plaintiff's notice included the bus driver, the city should have no trouble recognizing the bus driver as one of its own drivers and as the driver referred to in the body of the letter. *Id.* Therefore, we held that the plaintiff had substantially complied with the notice provisions of the Tort Claims Act. *Id.*

The *Scott* case is not controlling here for several reasons. First, the plaintiff's intention to bring a claim against the bus driver as an individual was much clearer in *Scott* than the Smiths' intention to bring a claim against the Surveyor in his individual capacity in this case. The notice in *Scott* specifically referred to the negligence of the city's driver, who was named and referred to as the driver in the caption portion of the notice. *See id.* at 339. The notice in this case makes no mention of the Surveyor's negligence; it refers only to the Board's negligence. Second, the *Scott* opinion discusses the adequacy of the tort claim notice in relation to the city, not to the bus driver individually. *See id.* at 341. There is no question in this case that the Smiths' notice was adequate as to the Board; the issue is whether the notice is adequate as to the Surveyor in his individual capacity.

We further note that although the heading of the Smiths' notice named the Surveyor, indicating that he had been served with a copy of the notice, the notice also included the county board of commissioners and its attorney. Therefore, the fact that the Surveyor was specifically named and served with a copy of the notice does not lead inescapably to the conclusion that the Surveyor was aware that his own actions were being called into question as the Smiths suggest. Moreover, the fact that the Surveyor serves on the Board as an ex officio, nonvoting member is also insufficient to put the Surveyor on notice that the Smiths intended to pursue a claim against him in his individual capacity. *See* Ind.Code § 36–9–27–5. Therefore, we agree with the trial court that the Smiths' tort claim notice, as it relates to the Surveyor, did not substantially comply with the Indiana Tort Claims Act. *See, e.g., Ricketts,* 720 N.E.2d at 1246.

### B.

The Smiths next argue that notice to the Surveyor was unnecessary to the

extent that their complaint requested equitable relief. The Smiths' complaint requested both monetary damages and injunctive relief. Because the Tort Claims Act, by its terms, applies only to a claim or suit in tort, it is inapplicable to claims requesting injunctive relief. *See* I.C. § 34–13–3–1; *Board of Trustees v. City of Indianapolis,* 498 N.E.2d 1002, 1003 (Ind. Ct.App.1986), *reh'g denied, reh'g denied.* Therefore, the Smiths conclude that even if the notice they sent to the Surveyor does not substantially comply with the statute, such compliance is not necessary because their claim for injunctive relief is not subject to the requirements of the Act.

■ In his answer to the Smiths' complaint, the Surveyor raised the notice requirement as an affirmative defense. Additionally, in a pre-trial pleading entitled County Surveyor, John R. McNamara's Contentions, the Surveyor asserted: The [Smiths'] complaint is barred for failing to file a timely and proper Notice of Claim against me. Record, pp. 284–285. The Smiths, however, never asserted during the trial or in their brief to the trial court that they were not required to give notice to the Surveyor due to the nature of relief sought. With respect to the notice requirement, the Smiths argued only that their notice was in substantial compliance with the Act. It is well settled that a party may not raise an issue on appeal that was not presented to the trial court. *Mitchell v. Stevenson,* 677 N.E.2d 551, 558 (Ind.Ct.App.1997), *trans. denied.* Because the Smiths never presented this issue to the trial court, it is waived for appellate review. *See id.*

In an attempt to avoid waiver of this issue, the Smiths argue that because the Surveyor did not seek a pretrial determination of the adequacy of the tort claims notice, there was no appropriate time for them to raise the issue. The Smiths further argue that it was not until the trial court entered its findings, conclusions, and judgment that the possibility that the trial court would err by imposing the obli-

gations of the Act on their claim for injunctive relief arose. Therefore, the Smiths conclude that their first available opportunity to address this specific issue is in this appeal. We find this argument unavailing. The Smiths were on notice that the issue of whether their claim against the Surveyor was barred for failing to comply with the notice provisions of the tort claims statute was before the trial court. However, the Smiths never argued to the trial court that, to the extent that their complaint requested equitable relief, they were not required to give notice to the Surveyor. Instead, they chose only to argue that that their notice was in substantial compliance with the Act. Because they knew that this issue was before the trial court but failed to argue it, the Smiths have waived this issue. *See, e.g., Mitchell,* 677 N.E.2d at 558.

### C.

■ The Smiths' final argument with respect to this issue is that the Surveyor waived, or is estopped from asserting, the inadequacy of the tort claims notice because he failed to obtain a pretrial determination of the sufficiency of the notice. In support, the Smiths cite to case law that states that the question of whether the tort claims notice complies with the Act is a question of law that the trial court should determine prior to trial. *See, e.g., City of Indianapolis v. Satz,* 268 Ind. 581, 584, 377 N.E.2d 623, 625 (Ind.1978); *Thompson v. City of Aurora,* 263 Ind. 187, 195, 325 N.E.2d 839, 843 (Ind.1975).

■ The cases cited by the Smiths, however, all involve jury trials. Because the sufficiency of the notice is not a question of fact for the jury, such issue should be resolved by the trial court before the case is submitted to the jury. *See Satz,* 268 Ind. at 584, 377 N.E.2d at 625 (holding that evidence of compliance with the Tort Claims Act was improperly submitted to the jury). The instant case, however, was tried to the bench, not the jury, and the same reasoning that guided those cases is

inapplicable here. In the context of a bench trial, as in the present case, it is not error for the trial court to make a judicial determination regarding the sufficiency of the notice along with the other issues that must be determined. *See, e.g., Thompson,* 263 Ind. at 195, 325 N.E.2d at 843 (noting that the collateral issue of notice was one that *may* be speedily resolved before trial) (emphasis added).

The Smiths argue that because the parties did not waive the right to a trial by jury until after the court-imposed cutoff date for dispositive motions, the distinction between bench and jury trials is irrelevant for purposes of their waiver argument. Consequently, the Smiths conclude that because the Surveyor did not raise the sufficiency of the notice prior to the court-imposed cutoff date for dispositive motions, when the case was still scheduled for a jury trial, the Surveyor waived any argument that the tort claims notice was insufficient.

■ Other than citing cases that stand for the proposition that the issue of the sufficiency of the notice is a question of law that the trial court should determine prior to trial, the Smiths do not cite any authority, nor do we find any, that supports their argument that the Surveyor's failure to obtain a pretrial determination of the issue results in waiver. We further note that there is no dispute that the Surveyor raised said issue as an affirmative defense in his answer. Therefore, the Smiths were aware that the sufficiency of the notice was going to be an issue in the case. Despite that knowledge, the Smiths never objected to proceeding to trial without a pretrial determination of the issue. An appellant cannot sit idly by without objecting, await the outcome of trial, and thereafter raise an issue for the first time on appeal. *Cheek v. State,* 567 N.E.2d

1192, 1195 (Ind.Ct.App.1991). Consequently, the Smiths' argument on this point is without merit.

## II.

■ The second issue is whether the trial court's conclusion that the Board's acts or omissions did not create any cause of action in favor of the Smiths is clearly erroneous. The Smiths' complaint against the Board alleged that the Board negligently supervised, monitored, or observed the construction of the drainage facilities.[3] The trial court's conclusions on this issue are as follows:

... I.C. 36–9–27–29 provides, in pertinent part: *'The county surveyor ...* shall: ... (3) Supervise all construction, reconstruction, and maintenance work performed under this chapter.['] (Emphasis added). I.C. 36–9–27–34 mandates the county surveyor to classify regulated drains as

'(1) Drains in need of reconstruction;

(2) Drains in need of periodic maintenance; or

(3) Drains that should be vacated.'

Finally, I.C. 36–9–27–35 provides, in pertinent part:

'(a) The county surveyor shall submit to the board a written report setting forth his classification of regulated drains in order of priority for action by the board. This report may be made from time to time during the surveyor's process of classification.

(b) The board may adopt the classifications and order of work priority as made by the county surveyor, or may modify them.'

Given the statutory scheme establishing the duty of the Surveyor or *vis a vis* the duty of the Drainage Board, the court is unable to conclude that the Board's acts or omissions regarding the Sherwood

---

3. In their complaint, the Smiths also alleged that the Board failed to warn buyers of the lots in the subdivision of the potential water problems and maintained the drainage facility as a nuisance. The trial court's conclusions do not specifically address these allegations. However, as the Smith's appeal focuses solely on the issue of the Surveyor's status as an agent of the Board, that is all we focus on as well.

Forest drainage systems created any cause of action by [the Smiths].

Record, pp. 690–691.

The Smiths do not dispute that it is the Surveyor, not the Board, that has the statutory responsibility for supervising all construction, reconstruction, and maintenance work with respect to the drain at issue. However, because of the Surveyor's status as an ex officio, nonvoting member of the Board, the Smiths assert that when the Surveyor exercised his powers and duties in matters relating to the drain at issue, he did so as a member of the Board. *See* Ind.Code § 36–9–27–5(a). Consequently, the Smiths conclude that the Surveyor's acts and omissions are attributable to the Board and, therefore, the Board is responsible for the alleged negligence of the Surveyor in supervising the construction of the drainage facilities.

■ The crux of the Smith's argument, although not using the term agent, is that the Surveyor is an agent of the Board. In order for the Surveyor to be considered an agent of the Board, it must be shown that he acted on behalf of the Board, with the Board's consent, and subject to the Board's control. *See Oil Supply Co. v. Hires Parts Serv., Inc.,* 726 N.E.2d 246, 248 (Ind.2000).

Pursuant to the statutes on drainage law, the Surveyor is an ex officio member of the Board. *See* I.C. § 36–9–27–5(a). An ex officio member is one that is a member by virtue of his title to a particular office, without the necessity of further warrant or appointment. *See* Black's Law Dictionary 575 (6th ed.1990); *Victory Comm. v. Genesis Convention Center,* 597 N.E.2d 361, 363 n. 1 (Ind.Ct.App.1992), *reh'g denied.* Thus, the Surveyor is a member of the Board by virtue of his position as the county surveyor. However, there is nothing in the statutes that give agent status to the Surveyor an ex officio board member. In fact, the statute gives different powers and duties to the Surveyor and the Board, and does not provide for the Board to have any oversight or control over the Surveyor in the completion of his statutory duties. *See, e.g.,* Ind.Code §§ 36–9–27–29, 36–9–27–34(a), 36–9–27–35. Moreover, the Board is not required to adopt the recommendations of the Surveyor: The [B]oard may adopt the classifications and order of work priority as made by the county surveyor, or may modify them. I.C. § 36–9–27–35(b). Thus, the Surveyor does not act on behalf of the Board when he performs his statutory duties nor is he subject to the Board's control in the performance of those duties. Therefore, the Surveyor is not an agent of the Board and the Board cannot be held responsible for the alleged negligence of the Surveyor. *See, e.g., Hires,* 726 N.E.2d at 248. Consequently, we hold that the trial court's conclusion that the Board's acts or omissions did not create any cause of action in favor of the Smiths is not clearly erroneous. *See, e.g., Yates–Cobb,* 681 N.E.2d at 733.

### III.

■ The final issue is whether the trial court's conclusion that the Smiths could not recover against Miller on an implied warranty of habitability theory because the Smiths did not rely on Miller's skill or expertise is clearly erroneous. A warranty of habitability, which is implied rather than express, warrants that the home will be free from defects that substantially impair the use and enjoyment of the home. *R.N. Thompson & Assocs., Inc. v. Wickes Lumber Co.,* 687 N.E.2d 617, 620 (Ind.Ct.App.1997), *trans. denied.* In the case of a second or subsequent purchaser, the implied warranty of habitability protects the subsequent purchaser from latent defects that are not discoverable upon the purchaser's reasonable inspection and which manifest themselves after the purchase. *Barnes v. Mac Brown & Co., Inc.,* 264 Ind. 227, 229, 342 N.E.2d 619, 621 (1976).

In this case, the trial court concluded that because the Smiths did not prove that

they relied on Miller's skill or expertise when they purchased their home, they could not recover against Miller on a theory of breach of the implied warranty of habitability. The trial court's conclusion on this issue is as follows:

... Miller is not the builder of the Smith's home. It was a vendor in the chain of title, having sold the lot to Lois Crachy before the construction of the dwelling itself was even begun. Mrs. Crachy later conveyed the parcel to Mr. and Mrs. Smith after the home was built. Miller was the developer of the Sherwood Forest subdivision, however. That was never disputed. In light of that fact, the *Jordan v. Talaga* case, 532 N.E.2d 1174, cited or referred to by all the parties, does appear to be the authority upon which any judgment against Miller must lie....

\* \* \* \* \* \*

In the *Jordan decision,* the Court of Appeals essentially adopted the holding [of] a Colorado case, *Rush [Rusch] v. Lincoln–DeVore [Lincoln–Devore] Testing Laboratory, Inc.,* (1984) 698 P.2d 832 with the following quotation:

'Accordingly, we hold that if land is improved and sold for a particular purpose, if vendor has reason to know that the purchaser is replying [sic] upon the skill or expertise of the vendor in improving the parcel for that particular purpose, and the purchaser does in fact so rely, there is an implied warranty that the parcel is suitable for the intended purpose.'

In this case Miller Builders improved real estate and sold it to Mrs. Crachy 'for a particular purpose,' namely the construction of a home. Miller had reason to know that prospective purchasers of lots in Sherwood Forest would rely on its skill and foresight in the construction of facilities that would prevent flooding of people's homes. In fact, Miller constructed the drainage basins with 21,926 cubic feet less capacity than the plans called for, a significant fact in this espe-

cially vulnerable area with its high water table.

The last element is: Did [the Smiths] 'so rely'? [The Smiths] have the burden of proving by a greater weight of the evidence that they did. Certain events preceding their purchase of Lot 71 are significant. Mr. Crachy told Mr. Smith about the earlier flooded basement, but indicated it was surface water. Mr. Smith also observed the drainage basins, which contained standing water. As he put it: 'I had concerns about whether the elevation of the water would ever be a problem.' Finally, the following colloquy took place with [an attorney for the Board and the Surveyor]:

'Q. What efforts did you make on your own to determine how high the water table was out there before you purchased it? What did you do about that?

A. I observed it in the retention pond.

Q. So you knew right from the start before you bought this place it was a high water table; is that true?

A. Yes. And I asked if it was a potential problem, and I was assured that it was not.

Q. But you didn't ask?

A. I asked the builder.

Q. You asked the builder. And that was the only person you asked?

A. That was the person from whom I was purchasing the property.'

The greater weight of the evidence does not support the premise that Mr. and Mrs. Smith relied on Miller Builders' 'skills or expertise' in this regard.

Record, pp. 691–693.

The Smiths argue that reliance is not an element of the implied warranty of habitability and that the trial court therefore erred in imposing a burden upon them to rely on answers to specific inquiries to Miller, a party with whom they had no

direct contact or privity of contract. Miller, on the other hand, argues that reliance is an essential element of the implied warranty of habitability and that because the Smiths knew about prior flooding problems and sought to have their concerns addressed by the builder rather than Miller, the trial court was correct in entering judgment in Miller's favor because the Smiths did not rely upon Miller's skill or expertise when making their decision to purchase the home.

Because the trial court relied upon *Jordan* in reaching its conclusion on this issue, an examination of that case is warranted. *Jordan v. Talaga*, 532 N.E.2d 1174, 1178 (Ind.Ct.App.1989), *reh'g denied, trans. denied.* Shortly after moving into their home, the homeowners in *Jordan* experienced flooding in their backyard. *Id.* After several more flooding incidents, which eventually involved the home itself and not just the land, the homeowners brought suit against the subdivision developers (who did not build the home), alleging breach of implied warranty of habitability. *Id.* at 1177, 1179. The question addressed by this court on appeal was [w]hether a professional developer who improves land for the express purpose of residential homebuilding with knowledge but without disclosure of a latent defect in the real estate that renders the land unsuitable for the purpose of residential homebuilding breaches an implied warranty of habitability. *Id.* at 1182. Because there was very little authority from our state to provide direction in deciding this question, we turned to decisions from the courts of other states. *Id.* at 1182–1185. In doing so, we stated that [t]he decisions from two other states are worthy of note because they hold the implied warranty of habitability applies to the sale of land from a developer. *Id.* at 1185. Those two cases were *Hinson* and *Rusch*. *Hinson v. Jefferson*, 287 N.C. 422, 215 S.E.2d 102 (1975); *Rusch v. Lincoln–Devore Testing Lab., Inc.*, 698 P.2d 832 (Colo.Ct.App. 1984). We then discussed both cases and quoted the holding from *Rusch*. *Jordan*, 532 N.E.2d at 1185.

It was from this quotation of *Rusch* that the trial court concluded that the Smiths had to prove that they did so rely on Miller's skill and expertise. However, we did not adopt the holding of *Rusch* as stated by the trial court. Instead, we found the decision in *Rusch* to be worthy of note. *Id.* Our discussion and quotation of *Rusch* in the *Jordan* case was designed to illustrate that other jurisdictions had reached the same conclusion under similar facts; namely, that the subdivision developers were liable to the homeowners for breach of the implied warranty of habitability. In reaching this same conclusion, we stated that [t]he facts and circumstances of the present case are particularly appropriate for the imposition of an implied warranty of habitability. *Id.* We then noted that the developers, who were professionals in the real estate business with knowledge of the water channel problem that they did not disclose, did more than sell raw land: they put in sewers and streets, and rough graded the lots for the express purpose of facilitating the building of homes. *Id.* Our holding was further guided by our concern that homeowners would be left without a remedy for latent defects in real estate that unscrupulous developers failed to disclose. *Id.* at 1186. Thus, the trial court's conclusion that the Smiths had to prove that they relied on Miller's skill and expertise is not supported by our holding in *Jordan*.

Having determined that proof of reliance on the subdivision developer is not mandated by our holding in *Jordan*, we next examine whether this reliance requirement is supported by other case law. Prior to 1976, a warranty of habitability was implied only between the builder and the initial purchaser. *See Theis v. Heuer*, 264 Ind. 1, 12, 280 N.E.2d 300, 306 (1972) (holding that the rule of caveat emptor would no longer be applied with respect to the purchase of a new residence from the builder-vendor). Then, in *Barnes*, our su-

preme court extended the implied warranty of habitability to second or subsequent purchasers in the case of latent defects that are not discoverable upon the purchaser's reasonable inspection and which manifest themselves after the purchase. *Barnes,* 264 Ind. at 229, 342 N.E.2d at 621. However, *Barnes* and its progeny do not require the second or subsequent purchaser to show that they relied on the builder's skill or expertise. *See, e.g., Wagner Constr. Co., Inc. v. Noonan,* 403 N.E.2d 1144, 1148 (Ind.Ct.App.1980). Indeed, such reliance would be unlikely and hard to prove given the lack of privity between the parties. Therefore, we hold that the trial court's conclusion that the Smiths could not recover against Miller on an implied warranty of habitability theory because the Smiths did not rely on Miller's skill or expertise is clearly erroneous. *See, e.g., Yates–Cobb,* 681 N.E.2d at 733. However, because the trial court did not make any conclusions, apart from the lack of reliance, about whether the warranty had been breached, we remand for a determination of that issue.

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded.

Affirmed in part, reversed in part, and remanded.

BAKER and VAIDIK, JJ., concur.