**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Mar 18 2014, 9:38 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL D. GROSS**
Lebanon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION     )
OF THE PARENT-CHILD RELATIONSHIP     )
OF: C.O. (Minor Child),               )
                                      )
AND                                   )
                                      )
T.E. (Mother),                        )
                                      )
    Appellant/Respondent,     )
                                      )
      vs.          )    No. 06A04-1307-JT-367
                                      )
THE INDIANA DEPARTMENT OF             )
CHILD SERVICES,                       )
                                      )
    Appellee/Petitioner.      )

APPEAL FROM THE BOONE CIRCUIT COURT
The Honorable J. Jeffrey Edens, Judge
The Honorable Sally E. Berish, Magistrate
Cause No. 06C01-1212-JT-372

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

### Case Summary

T.E. ("Mother") appeals the termination of her parental rights to her daughter, C.O. On appeal, Mother does not challenge the evidence underlying the trial court's decision to terminate her rights; rather, she argues that the services she received were not appropriate because they did not account for her intellectual disability. She also argues that the trial court failed to acknowledge that disability. But the record shows that caseworkers tailored Mother's services to her intellectual capabilities, and the trial court considered this issue when ruling on the petition to terminate Mother's parental rights. Critically, Mother's rights were terminated because of her ongoing instability and substance abuse, not because of her intellectual disability. Because we conclude that there is sufficient evidence to support the trial court's decision to terminate Mother's parental rights, we affirm.

### Facts and Procedural History

In June 2011, the local Boone County Department of Child Services ("BCDCS") received a report that C.O., sixteen months old at the time, was being neglected by her parents. BCDCS learned that Mother and C.O.'s father had a tumultuous relationship that included recent domestic violence, and Mother, who was on probation, had

substance-abuse issues.[1]  BCDCS filed a petition alleging that C.O. was a child in need of services ("CHINS").

Although C.O. had remained in her father's care after the CHINS filing, he was incarcerated in September 2011.  Because BCDCS could not locate Mother, C.O. was placed with her paternal grandparents.  When BCDCS ultimately located Mother, she admitted that C.O. was a CHINS because of her substance-abuse issues.  The court ordered Mother to undergo a substance-abuse assessment, parenting assessment, and psychological evaluation, and to follow any recommendations stemming from those assessments.  Mother was also ordered not to use any drugs or alcohol, submit to random drug testing, participate in counseling and life-skills training, maintain contact with BCDCS, and regularly visit C.O.  Finally, Mother was ordered to prevent any contact between C.O. and B.C., Mother's new boyfriend, a registered sex offender.

An initial psychological evaluation diagnosed Mother with alcohol dependence, cannabis abuse, depressive disorder, and anxiety disorder.  *See* State's Ex. 9.  The evaluator also recommended an assessment of Mother's cognitive functioning.  As a result, the trial court ordered a competency evaluation for Mother.  Two doctors, Dr. Parker and Dr. Olive, examined Mother.  In their respective reports, the doctors stated that Mother had an intellectual disability,[2] but she was capable of understanding and

---

[1] Because C.O.'s father is not a party to this appeal, we discuss him only when necessary.

[2] The parties use variations of the phrase "mental retardation," but we prefer to use the term "intellectual disability."  In 2010, President Barack Obama signed Rosa's Law, which replaced the term "mental retardation" with "intellectual disability" in all federal education, health, and labor laws. *See* 20 U.S.C. § 1140 (2010).  This is also the preferred medical terminology—in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V"), the diagnosis of intellectual disability is revised from the DSM-IV diagnosis of mental retardation.

participating in the termination proceedings. *See* Appellant's App. p. 16-21 (Dr. Olive's report), 22-26 (Dr. Parker's report).

Although she completed some services, Mother continued to test positive for drugs, and, as a result, she was not permitted to exercise parenting time with C.O. In November 2012, the trial court suspended services and approved a plan of adoption for C.O. One month later, BCDCS filed a petition to terminate Mother's rights. The trial court heard evidence on the termination petition over two days in April 2013.

At the hearings, caseworkers testified that Mother had not benefited from services. Mother's biggest issue continued to be substance abuse. *See* Tr. p. 24, 30-31. She tested positive for "THC or marijuana" sixteen times and cocaine once, and several times, Mother appeared to be intoxicated during planned parenting time. Mother was warned that positive drug tests would prevent her from exercising parenting time with C.O., but nonetheless, Mother continued to use drugs. At the time of the termination hearing, Mother had not seen C.O. in more than seven months. When Mother unexpectedly encountered C.O. and her paternal grandfather at a local Kroger, C.O. did not recognize her. *See id.* at 72.

Courtney Crowe, Mother's family case manager ("FCM Crowe"), confirmed Mother's ongoing substance-abuse issues. FCM Crowe acknowledged Mother's intellectual disability and explained that she had tailored services to address Mother's disability, using "a lot of repetition." *Id.* at 36. FCM Crowe also accounted for Mother's disability by giving her information "through a . . . variety of methods, phone calls, face-to-face conversations, and then follow-up with a letter stating here's what we talked

4

about, here's what you need to do." *Id.* at 62. Despite these efforts, FCM Crowe explained that Mother had not shown that she was capable of parenting her daughter:

> [Mother] has substance-abuse issues. [] Her primary issues are alcohol and marijuana. She has not, as long as I've known her, been able to stop using alcohol and marijuana. She creates an unsafe environment for her child because of her use. She has not been able to stay clean long enough to be able to even visit with her child. She's not seen her daughter in multiple months which has threatened the parent-child bond between the two. Her lack of follow[-]through with services, there's been no progress with those . . . she has shown that she's not enhanced her ability to parent.

*Id.* at 49. Crowe also expressed concern about Mother's marriage. The trial court had previously prohibited any contact between C.O. and B.C., Mother's boyfriend, a registered sex offender. Despite her knowledge of the court order, Mother married B.C. *Id.* at 55. Crowe ultimately recommended terminating Mother's parental rights. *Id.* at 54.

Inga Randle, C.O.'s court-appointed special advocate ("CASA"), also recommended terminating Mother's rights, agreeing that Mother's substance abuse continued to be a problem. *Id.* at 91. At the time of the evidentiary hearing, C.O. had been living with her paternal grandparents for nineteen months. CASA Randle told the court that C.O. was happy and content there, and her grandparents hoped to adopt her. *Id.* at 92. C.O.'s grandparents provided a "stable influence" for C.O.; she was attached to them, and she was developing normally for a child her age. *Id.*

Although present at the evidentiary hearings, Mother did not testify.

In June 2013, the trial court entered its order with findings terminating Mother's parental rights. *See* Appellant App. p. 7-15. The trial court summarized Mother's failure to benefit from services, particularly substance-abuse services, and noted her seventeen

5

positive drug tests, which had prevented her from seeing C.O. The trial court also referenced Dr. Parker's and Dr. Olive's competency assessments, saying:

> [Mother] [was found] to have limited but adequate insight into the current legal situation; [the doctor] found her capable of understanding the nature and objective of the legal proceedings, found she demonstrated a basic understanding of the goal of the proceedings, was aware of the role of witnesses and how to appropriately challenge witnesses and identified her preferred outcome of the proceeding as well as having a reasonable estimation of the likely outcome of the proceeding. . . . [S]he demonstrated a concrete but organized thought process, answered questions appropriately, and showed no significant defects during the cognitive portion of the mental status examination and was estimated to have an adequate ability to assist her attorney during the court proceedings.

*Id.* at 11. The trial court proceeded to terminate Mother's parental rights.

Mother now appeals.

## Discussion and Decision

On appeal, Mother does not challenge the evidence underlying the trial court's decision to terminate her rights; rather, she argues that the services she received were not appropriate because they did not account for her intellectual disability. She also argues that termination of her rights was improper because the court did not acknowledge her intellectual disability.

## Termination of Parental Rights

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citations omitted). The parent-child relationship is one of our culture's most valued relationships. *Id.* (citation omitted). "And a parent's interest in the upbringing of their child is 'perhaps the oldest of the fundamental liberty interests

6

recognized by the courts.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). But parental rights are not absolute—"children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *Id.* (citations omitted). Thus, a parent's interests must be subordinated to a child's interests when considering a termination petition. *Id.* (citation omitted). A parent's rights may be terminated if the parent is unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs. *Id.* (citations omitted).

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1229 (citation omitted). Instead, we consider only the evidence and reasonable inferences that support the judgment. *Id.* (citation omitted). "Where a trial court has entered findings of fact and conclusions of law, we will not set aside the trial court's findings or judgment unless clearly erroneous." *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, "we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment." *Id.* (citation omitted).

A petition to terminate parental rights must allege:

(A) that one (1) of the following is true:

> (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). "DCS must prove the alleged circumstances by clear and convincing evidence." *K.T.K.*, 989 N.E.2d at 1231 (citation omitted).

Rather than disputing that BCDCS met its burden of proof, Mother contends that the services she received were not appropriate because they did not account for her intellectual disability. She also argues that termination of her rights was improper because the court did not acknowledge her intellectual disability.

## I. Services

8

Mother argues that the services offered to her were not appropriate because they did not account for her intellectual disability.

We have previously explained that "the provision of services is *not* a requisite element of our parental rights termination statute, and thus even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal." *In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000); *see also In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000) (at a termination hearing, a "trial court can reasonably consider the services offered . . . and the parent's response to those services" but "the law concerning termination of parental rights does not require" that services be offered to correct parenting deficiencies and "termination of parental rights may occur . . . as long as the elements of Indiana Code section 31-35-2-4 are proven by clear and convincing evidence."). This reality aside, Mother's argument regarding services is not persuasive.

Contrary to Mother's claim, the evidence shows that caseworkers attempted to tailor services to Mother's needs. Mother's family case manager, FCM Crowe, expressly acknowledged Mother's intellectual disability and explained how she accommodated for the disability. Specifically, FCM Crowe utilized a "lot of repetition" and ensured that Mother received important information in the following manner: "through a . . . variety of methods, phone calls, face-to-face conversations, and then follow-up with a letter stating here's what we talked about, here's what you need to do." Tr. p. 36, 61-62. There is no error here.

## II. Trial-Court Order

9

Mother also argues that termination of her parental rights was improper because the court did not acknowledge her intellectual disability in its termination order. But the court acknowledged Mother's intellectual disability when it discussed her competency—the court discussed, at length, Mother's ability to understand and participate in the termination proceedings:

> [Mother] [was found] to have limited but adequate insight into the current legal situation; [the doctor] found her capable of understanding the nature and objective of the legal proceedings, found she demonstrated a basic understanding of the goal of the proceedings, was aware of the role of witnesses and how to appropriately challenge witnesses and identified her preferred outcome of the proceeding as well as having a reasonable estimation of the likely outcome of the proceeding. . . . [S]he demonstrated a concrete but organized thought process, answered questions appropriately, and showed no significant defects during the cognitive portion of the mental status examination and was estimated to have an adequate ability to assist her attorney during the court proceedings.

Appellant's App. p. 11.

From this it is clear that the trial court was aware of Mother's disability but nonetheless terminated her rights because of her ongoing instability and substance abuse. Mother tested positive for drugs (marijuana and cocaine) seventeen times during the termination proceedings, even after completing some therapeutic services. Mother's drug use continued despite warnings that positive drug tests would prevent her from seeing her daughter. At the time of the termination hearing, Mother had not seen C.O. in more than seven months, with one exception—an unexpected encounter at the local grocery store, during which C.O. did not recognize Mother. And at the time of the termination hearing, Mother was married to a registered sex offender, B.C., despite previous court orders prohibiting any contact between C.O. and B.C. Based on these circumstances,

10

caseworkers testified that Mother was incapable of providing a safe, stable, and secure home for C.O., and they recommended terminating her parental rights. Notably, Mother does not argue that these circumstances were somehow caused by her intellectual disability. Nor does she challenge any of the evidence cited by the trial court in its findings. As such, the unchallenged findings stand as proven.[3]

We conclude that the trial court's unchallenged findings support its conclusions and prove the elements of Indiana Code section 31-35-2-4(b)(2) by clear and convincing evidence. We therefore affirm the termination of Mother's parental rights.

Affirmed.

RILEY, J., and MAY, J., concur.

---

[3] "[W]here a party challenges only the judgment as contrary to law and does not challenge the special findings as unsupported by the evidence, we do not look to the evidence but only to the findings to determine whether they support the judgment." *Smith v. Miller Builders, Inc.*, 741 N.E.2d 731, 734 (Ind. Ct. App. 2000) (citing *Boyer v. First Nat'l Bank of Kokomo*, 476 N.E.2d 895, 897 (Ind. Ct. App. 1985)).