# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 09 2017, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel L. Askren
O'Connor and Askren Law Office
Attica, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of M.W. (Child) and E.W. (Mother); | June 9, 2017 |
| | Court of Appeals Case No. 23A04-1611-JT-2517 |
| E.W. (Mother), | Appeal from the Fountain Circuit Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Susan Orr Henderson, Judge |
| The Indiana Department of Child Services, | Trial Court Cause No. 23C01-1607-JT-125 |
| *Appellee-Petitioner* | |

**May, Judge.**

[1] E.W. ("Mother") appeals the termination of her parental rights to M.W. ("Child"). She argues the evidence was insufficient to support termination. We affirm.

## Facts and Procedural History

[2] Child was born to Mother[1] on April 4, 2015. On April 5, 2015, the Department of Child Services ("DCS") received a report Child was a victim of abuse and neglect. Specifically, the report alleged Child exhibited symptoms of drug withdrawal after birth and Mother admitted using hydrocodone during her pregnancy.

[3] On April 11, 2015, Mother admitted to hospital staff that she also used heroin during her pregnancy. On April 14, 2015, DCS Family Case Manager ("FCM") Linda Essman visited Mother and Child at the St. Elizabeth Hospital in Lafayette, Indiana. Hospital staff told FCM Essman that Child began exhibiting symptoms of drug withdrawal roughly twelve hours after birth and was transferred to the NICU, where she subsequently tested positively for opiates. FCM Essman met with Mother that same day at the Warren County DCS office. Mother admitted to FCM Essman that she had used heroin for six weeks prior to Child's birth. She further indicated she lived with her boyfriend,

---

[1] Child's biological father is unknown.

J.T. ("Boyfriend"), at his sister's house in Attica, Indiana. Mother reported she used heroin when she gets depressed.

[4]     For most of April, Child remained in the hospital under the care of doctors so that her condition could be monitored and treated. Doctors initially used codeine and morphine to treat Child's drug withdrawal, but eventually weaned Child off the drugs. However, Child continued to have problems breathing as she was born with underdeveloped lungs because of Mother's heroin use during pregnancy.

[5]     On April 17, 2015, FCM Essman met with Mother and Boyfriend. Mother agreed to start intensive homebased services to assist her with substance abuse, parenting skills, education, and preparation for a newborn in the home. Boyfriend, who had used heroin with Mother in the past, agreed to participate in services with Mother. On April 24, 2015, FCM Essman received drug screen results for Mother and Boyfriend indicating they both tested negative for any illegal substances.

[6]     Child was released from the hospital on April 28, 2015. That day, DCS filed a petition alleging Child was a CHINS. DCS classified the case as an "In-Home" CHINS case, (Ex. Vol. 1 at 44),[2] allowing Child to return to Mother's care as

---

[2] The trial court clerk's failure to number the pages of the Exhibit volumes greatly hindered our review of the record. We cite the page numbers as they appear consecutively in the PDF format of the Electronic Record. *See* Ind. Appellate Rule 29(A) (requiring the Exhibits be filed in accordance with Appendix A(2)(a), which provides: "Each volume of the Transcript shall be independently and consecutively numbered at the bottom. Each volume shall begin with numeral one on its front page.").

long as Child's medical conditions allowed her to remain home and Mother and Boyfriend remained drug-free and consistently underwent drug screenings.

[7] On June 9, 2015, the court held a fact-finding hearing at which Mother admitted Child was a CHINS. On June 10, 2015, the court adjudicated Child a CHINS and entered a dispositional order requiring Mother to participate in "Homebuilders," Intensive Outpatient Treatment ("IOT"), random drug screens, medication management, and case management. (*Id.* at 14.) The court scheduled a hearing to review Mother's progress on September 15, 2015.

[8] Mother and Boyfriend initially complied with the court's requirements. Within a month of Mother and Child returning home from the hospital, Boyfriend obtained a job and an apartment, and Mother and Child moved in with Boyfriend. Mother was participating in home-based management through Bauer Family Resources. However, on July 31, 2015, Mother and Boyfriend underwent random drug screenings and tested positive for amphetamine and methamphetamine.

[9] Because of Mother's drug use, DCS removed Child from Mother's care on August 3, 2015 and placed Child in foster care. The court held a detention hearing that same day. Mother appeared at the hearing. Mother admitted she was unable to care for Child while under the influence of illegal substances and did not object to the court placing Child in foster care. Boyfriend was also fired from his job in late July, and, as a result, lost his apartment in August 2015.

Mother and Boyfriend began staying with Boyfriend's various family members, moving from home to home.

[10] On September 21, 2015, the court held a review hearing on Mother's progress. The court noted Mother had remained mostly compliant with her case plan, but had been unable to maintain housing and had tested positive for amphetamine and methamphetamine on two occasions. At the time of the hearing, Child was in foster care placement, but the court authorized DCS to transfer Child to relative placement with Mother's cousin. The court ordered the permanency plan remain reunification and scheduled a review hearing for January 12, 2016.

[11] Mother started case management services with Stephanie Greer of Bauer Family Resources in September 2015. Greer worked with Mother and DCS to establish goals for Mother of finding housing, getting a vehicle, maintaining a stable job, and staying drug and alcohol free. Greer also began facilitating supervised visits with Mother and Child in December 2015. Mother was very consistent in attending the visits initially. The visits were "community visits," (Tr. at 13), which took place at public places such as the library or park. However, Mother's visits with Child never progressed to being unsupervised or at-home visits. Additionally, during this period, Mother was able to obtain employment, but she was never able to attain stable, long-term employment lasting longer than "two to three months." (*Id.* at 15.)

[12] The court held a permanency hearing on January 12, 2016. The court found Mother had not been compliant in submitting drug tests, attending visits with

Child, or attending services. The court also noted Mother recently tested positive for heroin. The court modified its dispositional order, requiring Mother to maintain weekly contact with DCS, allow DCS to make unannounced visits to Mother's home, complete an intensive family preservation program, comply with all directives from services providers, attend all appointments as scheduled, and submit drug and alcohol screenings within one hour of DCS's requesting her to do so.

[13] Mother made multiple attempts at rehabilitation, but failed to successfully complete any rehabilitation program. On February 29, 2016, Mother was admitted to Home with Hope for inpatient drug treatment. While participating in the program, Mother continued to use drugs and tested positive for drugs.

[14] The court held a status hearing on March 15, 2016. The court noted Mother had made "little to no progress" toward her case plan. (Ex. Vol. 1 at 30). The court changed the permanency plan from reunification to adoption. Mother was discharged from Home with Hope on March 24, 2016, for "leaving against staff advice and insubordination." (Ex. Vol. 2 at 4.)

[15] The court held a permanency hearing on May 18, 2016. The court found Mother had made insufficient progress toward reunification with Child and DCS had exhausted its services available to Mother. The court approved DCS's proposed permanency plan for termination of Mother's parental rights. On July 19, 2016, DCS filed its petition to terminate Mother's parental rights.

On October 5, 2016, the court held a hearing on DCS's termination petition. After hearing evidence, the court terminated Mother's parental rights in an order that provided, in pertinent part:

c. Mother and [Boyfriend] initially engaged in services from Home Builders and made some progress in: 1. Safe and stable housing; 2. Sustainable source of income and 3. Maintaining sobriety. The dispositional decree entered June 9, 2013 [sic] ordered the [sic] Mother to participate in services. Mother was ordered to participate in Home Builders, Intensive Outpatient Treatment for substance abuse, random drug screens, medication management, case management, supervised visits, and individual therapy. [Boyfriend] was not ordered to participate in services, but in order to remain active in the child's life, was required to submit random drug screens and engage in services to assist to [sic] ensure the goal of reunification.

d. Mother maintained periods of sobriety, but was unable to sustain long term abstinence. She relapsed several times during the pendency of the CHINS case. [Boyfriend] also relapsed and has not been active in this case since he tested positive in December 2015. Mother suffers from depression and has been addressing her illness with medication (Prozac). Mother attempts to manage her opiate addiction with Suboxen [sic], for which she has a valid prescription. Mother does not always take her medications as prescribed. At the time of the hearing herein, she presented in court in a disheveled state—her hair and clothing looked as if she had just gotten out of bed; her affect was flat and her testimony was difficult to follow.

e. Mother sought treatment at Home With Hope in Lafayette as a treatment option in Feb. 2016. She relapsed and was removed from that program. She was offered the chance to go to Harbor Lights in patient [sic] program, but determined she'd rather manage her addiction with Suboxen [sic] and did not want to get

completely clean and sober for fear it would not be possible to sustain.

f. Mother has continued to reside with [Boyfriend] throughout this case. They have moved from their apartment in Attica, Indiana, in August 2015 and has since lived [sic]: 1. Attica, with [Boyfriend's] sister; 2. Attica, with [Boyfriend's] mother; 3. Williamsport, with [Boyfriend's] other sister; [4]. Attica, with [Boyfriend's] sister; [5]. Attica, back with [Boyfriend's] mother. At times, Mother and [Boyfriend] sleep in Mother's car. She has been unsuccessful in obtaining safe and stable housing.

g. [Boyfriend] has been a barrier for reunification for Mother. She has been made aware of this barrier by every service provider; by her case manager; by CASA and by the Court. She is unwilling or unable to terminate her relationship with [Boyfriend] and he is unwilling or unable to engage in services in order for reunification to occur.

h. Mother has exercised nearly all of her supervised visits. Visits remain at fully supervised as Mother has no stable housing suitable for the visits to transition to her home. Mother loves [Child]. The only service provided by the DCS that Mother regularly and consistently participated in is supervised visitation.

i. Child suffers from respiratory issues as a result of Mother's drug use while pregnant and cannot be around cigarette smoke. Mother, [Boyfriend], and others in their household smoke cigarettes.

j. Mother suffers from depression and anxiety. She was ordered to participate in individual counseling. She failed to consistently attend her sessions and the individual service was closed due to lack of participation.

K. Mother suffers from drug addiction. She was ordered to participate in IOP. She was offered assistance to attend an in-patient treatment center and declined. Mother chooses to remain on Suboxen [sic] to control her addiction, but has relapsed even when on Suboxen [sic].

l. Mother has worked a variety of jobs during the pendency of the CHINS case, however, has failed to maintain longevity or permanency with any employment. Mother cannot provide adequate support for [Child].

m. Despite initial compliance and efforts to cooperate and participate in services, Mother has been unable to sustain progress to effectuate reunification. Intensive services at the commencement of the case to allow the child to remain in the home failed. Extensive services offered to Mother after removal have had no significant impact on Mother's long-term stability and ability to care for [Child]. Additional services would not benefit this family.

*****

n. . . . Mother has been unable to sustain employment, suitable housing, or a drug free lifestyle. These are ongoing problems and do not appear [sic] that any improvement their circumstances will be happening in the near future. The child has been in [and] out of home placement for fourteen months and needs a permanent and stable home[.]

o. CASA recommended that termination would be in [Child's] best interest.

p. The child has supportive and loving relative placement. She is bonded to the family, her needs are being met and [she] is well taken care of.

(App. Vol. 2 at 8-11) (internal citations omitted). The court concluded, based on the above findings, termination was in Child's best interest.

# Discussion and Decision

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009), *reh'g denied*. To terminate a parent's rights, the State must file a petition in accordance with Indiana Code Section 31-35-2-4 and then prove the allegations therein by clear and convincing evidence. *Id.* at 1260-61. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8; *In re N.G.,* 51 N.E.3d 1167, 1170 (Ind. 2016).

A petition to terminate the parent-child relationship must allege:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The trial court must enter findings of fact to support each of its conclusions as to those allegations. Ind. Code § 31-35-2-8(c).

[33] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* We apply a two-tiered standard of review: we determine first whether the evidence clearly and

convincingly supports the findings, and second whether the findings clearly and convincingly support the conclusions. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). However, where a party challenges the judgment but does not challenge the findings of fact as unsupported by the evidence, we look only to the findings to determine whether they support the judgment. *Smith v. Miller Builders, Inc.*, 741 N.E.2d 731, 734 (Ind. Ct. App. 2000). We will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[34] Mother challenges the court's conclusion under subsection (B) that there was a reasonable probability the conditions that lead to Child's removal and placement outside the home will not be remedied. The conditions that lead to DCS's involvement in this case, and, ultimately, to Child's removal from Mother's care is Mother's drug use.

[35] The trial court made numerous findings supporting its conclusion there was a reasonable probability Mother's drug addiction was not being remedied. As the trial court found, Mother made many attempts at drug rehabilitation, but she failed to successfully follow through with any of her drug rehabilitation programs. Furthermore, Mother's continued relationship with Boyfriend posed a great barrier to Mother's ability to fight her drug addiction, as Mother would use drugs with Boyfriend. At the time of the termination hearing, Mother was "bouncing from home to home," (Tr. at 25), and was believed to be staying with Boyfriend at Boyfriend's sister's home. Greer, who was Mother's home-

based counselor for much of the case, indicated while Boyfriend had indeed been present throughout the entire case, Boyfriend had not visited Child since December 2015. The court noted these findings in its termination order. DCS and service providers discussed with Mother the hindering effect Mother's relationship with Boyfriend caused on her ability to reunify with Child. However, Mother was unwilling or unable to end her relationship with Boyfriend.

[36]   Mother states she had "employment, housing, transportation, a valid driver's license, and was visiting the child, with [whom] she is bonded." (Appellant's Br. at 17.) She claims, in light of her "continued participation in visitations and desire to get treatment," (*id.*), there was a lack of sufficient evidence to terminate her parental rights.

[37]   Mother's assertions lack merit and are an invitation for us to reweigh evidence. *See In re D.D.,* 804 N.E.2d at 265 ("when reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses"). The trial court concluded Mother was unable to sustain employment, suitable housing, or a drug-free household. The trial court's conclusions are supported by its findings that "despite initial compliance and efforts to cooperate and participate in services, Mother [was] unable to sustain progress to effectuate reunification." (App. Vol. 2 at 10.) Mother relapsed multiple times. The trial court noted intensive home-based services were offered to Mother at the outset of the case, followed by extensive services after Child was removed from Mother's care in August 2015, but that no services

have had any significant impact on Mother's long term ability to care for Child. In light of Mother's inability to adequately address her substance abuse issues, we cannot say the trial court erred in concluding there was a reasonable probability the conditions leading to Child's removal would not be remedied. *See In re D.W.,* 969 N.E.2d 89, 97 (Ind. Ct. App. 2012) (trial court's finding parent failed to take advantage of services and failed to stay drug-free supported its conclusion the conditions causing children's removal from parent's home would not be remedied).

# Conclusion

[38] The court's unchallenged findings support its judgment terminating Mother's parental rights. Accordingly, we affirm the termination of Mother's parental rights.

[39] Affirmed.

Brown, J., and Pyle, J., concur.